GUSSIE JOHNSON, Plaintiff-Appellant, *v.* ARTHUR F. QUERN, Director, Illinois Department of Public Aid, *et al.*, Defendants-Appellees.

Fourth District    No. 16183

Opinion filed November 7, 1980.—Rehearing denied December 11, 1980.

George Bell, of Land of Lincoln Legal Assistance Foundation, of Champaign, for appellant.

William J. Scott, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

After wading through the sea of alphabet soup which typically surrounds governmental programs, we reverse.

This action comes before us through administrative review of a decision made by the Illinois Department of Public Aid (IDPA), denying plaintiff's request for disability benefits under the Illinois program for Aid

to the Aged, Blind and Disabled (AABD). The circuit court affirmed the IDPA's determination.

## FACTS

On August 31, 1978, plaintiff filed an application with the IDPA in Champaign County for public assistance. Although our record does not contain a copy of the application, every indication we have is that plaintiff applied for only AABD. Again, although not explicitly evidence here, it appears as if plaintiff also filed an application with the Social Security Administration (SSA) for Supplemental Security Income (SSI). (42 U.S.C. §1381 (1976).) Our record does not indicate when the application was filed with the SSA or whether plaintiff filed this application at the direction of the IDPA.

Based solely on plaintiff's AABD application, plaintiff was put on presumptive eligibility status (PE), pending a determination of disability by the SSA. The county department thus authorized, on October 18, 1978, interim assistance payments of $214.02.

On November 28, 1978, the IDPA was notified by the SSA that SSI payments had been denied to plaintiff because it was found that she was not disabled. On the same date, the IDPA denied plaintiff's application on the basis that the SSA had determined that she was not disabled and terminated the interim assistance effective January of 1979.

On December 7, 1978, plaintiff filed a notice of appeal with the IDPA and a hearing was held on January 10, 1979. At the hearing, the only question considered by the IDPA was whether SSA had in fact found that she was disabled. Counsel for the plaintiff attacked the policy of the IDPA which delegates the disability determination to the SSA. A final administrative decision denying the application for assistance was entered on February 1, 1979.

## TRIAL COURT

On March 8, 1979, plaintiff filed a complaint under the Administrative Review Act. (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*) In the complaint, plaintiff asserted that she was sufficiently disabled to qualify for medical and financial assistance under the AABD program and that the decision to deny her application was erroneous; that she was denied due process of law by the IDPA's refusal to continue her assistance payments pending appeal; and that she was denied due process since she was not allowed a hearing on the factual determination of her disability.

On March 3, 1980, the circuit court entered an order affirming the final administrative decision. The court framed two issues on appeal: whether the plaintiff had a statutory or administrative right to insist that Illinois make its own determination on the question of disability; and whether it was a violation of the IDPA's regulations of due process for the IDPA to terminate the interim assistance without a hearing.

On the first question, the trial court concluded that Illinois had instituted a State program to supplement fully the Federal SSI program. The court indicated that the State Supplemental Payments (SSP) were mandated by section 3—13 of the Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, par. 3—13), and that for all practical purposes SSP and AABD are not the same program. The court concluded that under section 3—13 of the Public Aid Code the IDPA has the power to make regulations governing a determination of disability which it has done by delegation to the SSA. The court noted that the plaintiff predicated her contention for a separate State determination of her disability upon sections 3—1 and 3—4 of the Public Aid Code. The court found, however, that the passage of sections 3—13 and 3—14 established a unified complementary Federal-State program for aid to the disabled. The court determined that an administrative appeal of an adverse determination is provided by the Social Security Administration under provisions of 42 U.S.C.A. §1383(c) (1976), and that an adequate safeguard is provided for the rights of the applicant.

On the second question, the trial court found that the Illinois Department makes a determination upon initial application that if the applicant is indeed determined to be disabled, then a certain monthly benefit would be applicable. Illinois then pays interim assistance but the applicant is not truly eligible until the determination of disability is made. The court also found that discontinuance of the interim payments is not a termination of a right or an entitlement when no disability is found. The court concluded that since the disability determination was being made by the Federal Government, there was no requirement upon the State to continue presumptive payments during the time that an appeal is made of the Federal decision.

## ISSUES

The plaintiff now prosecutes this appeal, arguing that the IDPA was required by State statutes, Federal regulations, and the Illinois and United States constitutions to provide her with a hearing encompassing the question of her disability. She also argues that the State was required pursuant to IDPA policy, Federal regulations, and the Illinois and United States constitutions to provide her with a hearing prior to termination of her benefits on a presumptive eligibility status. The Department claims that this case has been mooted due to the fact that plaintiff is now receiving benefits. We address the final claim first.

## MOOTNESS

■■■ It is the duty of an appellate court to decide actual controversies which can be carried into effect and not to give opinion upon moot

questions or abstract propositions or to declare principles of law which cannot affect the matter in issue in the case before the court. (*Rasky v. Anderson* (1978), 62 Ill. App. 3d 633, 379 N.E.2d 1.) A moot question is one that existed but because of the happening of certain events has ceased to exist and no longer presents an actual controversy over the interest or rights of the party; an abstract question is one in existence but for which no effectual relief can be granted. (*Harney v. Cahill* (1965), 57 Ill. App. 2d 1, 206 N.E.2d 500.) Where there are strange circumstances which render the issue on appeal moot, the appeal will be dismissed even though such facts do not appear in the record. See, *e. g., Slaughter v. Thornton* (1975), 30 Ill. App. 3d 285, 332 N.E.2d 525.

In her brief, plaintiff asserts that the "SSA finally decided on January 21, 1980, that the initial determination of no disability was erroneous and that the plaintiff had in fact been disabled since September 14, 1978, the date she applied for SSI." Defendant now focuses upon this language and argues that the case has become moot.

As plaintiff points out in her reply brief, however, even though she received retroactive SSI benefits, she has not received retroactive AABD benefits. Thus, while she is currently receiving benefits, she has not received benefits which were due from the time of her initial application. Should we grant the relief plaintiff requests, we would remand for a hearing to determine whether she was in fact disabled at the time of her initial application. Under the facts and circumstances of this case, we do not feel that the appeal has been mooted. Having made this finding, we do not address plaintiff's contention that this court should consider the case under the "public interest" exception to the mootness rule. See *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1979), 67 Ill. App. 3d 616, 385 N.E.2d 159.

### HEARING REQUIRED

■■ We next consider the question of whether the IDPA was required to provide plaintiff with a hearing encompassing the question of disability upon the denial of her AABD application. Plaintiff argues that Illinois statutes, Federal statutes and regulations, and the Illinois and United States constitutions require such a hearing. Without reaching the question of whether the hearing was required by Federal statutes or regulations or the Illinois or United States constitutions, we find that plaintiff did indeed have a right to such a hearing on the questions of disability pursuant to Illinois statutes.

Article III of the Illinois Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, par. 3—1 *et seq.*) contains provisions creating a program to provide aid to the aged, blind or disabled. Specifically section 3—1 provides:

"§3—1. Eligibility Requirements. Financial aid in meeting basic maintenance requirements for a livelihood compatible with health and well-being shall be given under this Article to or in behalf of aged, blind, or disabled persons who meet the eligibility conditions of Section 3—1.1 through 3—1.6."

Section 3—4 of the Code provides that a disability determination shall be made by technically competent persons designated by the IDPA on the basis of medical, social and vocational reports certified by the county department.

Section 11—8 of the Code provides that applicants may appeal within 60 days following a decision of the county department denying assistance under article III and that such appeal shall be taken to the Illinois department. Section 11—8.1 provides:

"Upon receipt of an appeal the Illinois Department, Public Aid Committee, or Commissioner of Appeals, as the case may be, shall review the case. The appellant shall be entitled to appear in person and to be represented by counsel. *He shall be afforded an opportunity to present all relevant matter in support of his claim for aid,* or his objection to (a) termination of aid, of (b) the amount of aid, or (c) a determination to make a protective payment." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 23, par. 11—8.1

Plaintiff asserts, and we agree, that this section requires the IDPA to consider the question of disability where her appeal has been filed within 60 days of the denial.

Defendant claims that section 11—8.1 does not require that the IDPA provide a hearing on the factual issue of plaintiff's disability when the same issue is being decided by a Federal agency. Defendant contends that the requirements of section 11—8.1 are fulfilled by administrative and judicial review under section 1383(c) of the Social Security Act. 42 U.S.C.A. §1383(c) (1976).

There are two weaknesses in defendant's position. First, the defendant has assumed that AABD and SSP are the same program. While the trial court concurred in this conclusion, it is not supported by a reading of article III of the Public Aid Code nor even by the IDPA regulations which defendant has brought to our attention. The second problem with the defendant's analysis is that it completely ignores the requirements of sections 11—8 and 11—8.1 of the Code.

Defendant further argues that by passage of sections 3—13 and 3—4 of the Public Aid Code, the legislature declared a position requiring that the primary responsibility for care of disabled persons rests upon the Federal Government.

Section 3—13 provides in its relevant portions:

"It is the position of this State that the Federal government should

meet its obligation to provide financial aid to those aged, blind or disabled persons eligible under Article III hereof so as to assure those persons a standard of living compatible with health and well-being, including any supplementary aid program provided to meet special or emergency needs, * * * .

The Illinois Department shall institute a State program to fully supplement the federal Supplemental Security Income grants of all persons in the aged, blind, or disabled categories who meet the eligibility and need requirements of this Code, * * * ." Ill. Rev. Stat. 1979, ch. 23, par. 3—13.

Section 3—14 authorizes the IDPA to enter into agreements with the Secretary of Health, Education and Welfare to administer all portions of a State program to supplement Federal grants.

In essence, the defendant is arguing that the State SSP program has totally superceded the previous AABD program. We do not agree. Our reading of the legislative scheme encompassed by article III of the Public Aid Code indicates that two parallel, yet distinct, programs are created and that these programs are to function independently of each other. In fact, the defendant has admitted in the course of arguments for this case that there are people in Illinois who are receiving AABD who are not eligible for one reason or another for either SSP or SSI.

INTERIM ASSISTANCE

The final question we address is whether the IDPA was required to continue plaintiff's interim assistance pending a determination of her appeal. Plaintiff claims that such a requirement exists pursuant to IDPA policy, Federal regulations, and the United States Constitution.

Pursuant to its power to promulgate regulations, the IDPA has established application procedures. PO-235 of the Categorical Assistance Manual (ABBD) describes the procedures for "APPEALS AND FAIR HEARINGS." PO-235.1 states that "Any individual who applies for or receives financial or medical assistance or social services has the right to appeal any of the following * * * : 3. A decision to deny an application." Another subsection of PO-235 states:

> "If the client or an authorized representative files an appeal within 10 calendar days of the date on the timely notice, assistance is to be continued at the level in effect prior to the proposed action pending in the results of the fair hearing process." PO-235.4.

■■ The defendant now argues that since PO-235.4 does not specifically address applications or applicants, plaintiff did not have a right to continued assistance pending the appeal. We disagree. A plain reading of PO-235 and its subsections clearly indicates to us that the policy was to apply to both applicants and recipients and that the defendant reads the

158

subsection much too narrowly. We hold, therefore, that pursuant to IDPA policy, the plaintiff was entitled to continued assistance pending a determination of her appeal of the denial of her application for assistance.

Having reached this conclusion, we do not address the question of whether the plaintiff was entitled to continued assistance on a presumptive eligibility status pursuant to Federal statutes or the United States Constitution.

The decision of the circuit court is hereby reversed, and the cause is remanded for proceedings consistent with the view expressed herein.

Reversed and remanded.

WEBBER and GREEN, JJ., concur.