Amos DIXON, et al., Plaintiffs,

v.

**Arthur QUERN, Director of Illinois Department of Public Aid, et al., Defendants.**

No. 77 C 1125.

United States District Court, N. D. Illinois, E. D.

April 27, 1982.

Frederick J. Daley, Chicago, Ill., for plaintiffs.

Mary Anne Mason, Asst. U. S. Atty., Chicago, Ill., for federal defendant.

Patrice P. Suberlak, Sp. Asst. Atty. Gen., Chicago, Ill., for state defendant.

BUA, District Judge.

## ORDER

This cause comes before the court on the plaintiffs' and the state defendants' cross motions for summary judgment on Count I of plaintiffs' two count complaint.[1] There being no contested issues of material fact, judgment is rendered as a matter of law.

## FACTS

The plaintiffs allege that they are disabled and that they qualify for state and federal benefits under programs designed to aid the financially destitute, aged, blind and disabled. Each plaintiff applied for aid under the federal Supplemental Security Income (SSI) program, Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. Each plaintiff also applied for state aid under the Supplemental Security Payments (SSP) program of the State of Illinois, Ill. Rev.Stat., ch. 23 §§ 3–1 et seq., 5–1 et seq.[2]

Under the SSP program, Illinois makes additional financial and medical assistance available to recipients of federal Supplemental Security Income (SSI). SSP is available despite ineligibility for SSI only if the applicant's ineligibility for SSI is based on excess income. Aid to the Aged, Blind and Disabled (AABD) Categorical Assistance Manual; Policy 415.1 Dated 5/28/76. SSP is not available to one who has been denied SSI because of a Social Security Administration (SSA) finding of non-disability.[3]

Illinois Department of Public Aid (IDPA) regulations provide that an applicant for SSP who claims to be disabled may also receive interim financial and medical assistance from the state on a presumptive eligibility basis. In order to receive assistance, the applicant must first apply for SSI bene-fits. Interim assistance is only available pending the SSA's initial review of the applicant's disability status, AABD Categorical Assistance Manual, Policy 430, Policy 710.1, and is terminated upon a finding of non-disability by the SSA.

The applicant whose interim assistance has been terminated because of the SSA's initial determination of non-disability, no longer enjoys presumptive eligibility status. He may ask for reconsideration or appeal the decision to terminate his interim assistance. If an appeal is requested, then the issue at the IDPA hearing is limited to whether SSA has in fact made an initial determination of non-disability and whether the notice of termination of interim assistance complied with the IDPA regulations.

Along with terminating the applicant's interim assistance, the SSA non-disability determination also effects a denial of the application for both SSI and SSP. Appeal from denial of applications for both these programs is via one appellate process in force pursuant to the federal program. After the SSA has notified the applicant of its initial disability determination, the applicant may request reconsideration. If, after reconsideration, SSA still finds the applicant to be non-disabled, he may request a full evidentiary hearing before an administrative law judge. At this hearing the merits of the applicant's disability are considered de novo. This is the only time that applicants for SSP and SSI receive a hearing on the merits of their claimed disability. If the initial determination of non-disability is affirmed, then a discretionary appeal may be taken to the SSA Appeals Council, after the decision from which, the applicant may seek judicial review. 42 U.S.C. § 1383(c)(3). If the adverse initial determination is reversed by an ALJ, the applicant

---

1. Also pending before this court at this time is plaintiffs' motion for class certification on Count II of the complaint. That motion is dealt with in a separate order issued concurrently with this order.

2. The SSP program provides a state funded financial grant under ch. 23, Ill.Rev.Stat., §§ 3–1 et seq. and medical assistance (Medicaid) administered by the state, but jointly fund-ed by the state and federal governments. Ill. Rev.Stat., ch. 23 §§ 3–6, 5–1 et seq.; 42 U.S.C. §§ 1396 et seq.

3. According to IDPA regulations, an applicant for state SSP must first apply for federal SSI benefits. AABD Manual; Procedure 305.2. Dated 11/20/78.

is then retroactively granted both SSI and SSP under the federal and state programs. The SSA appellate process progresses to a hearing before an ALJ after delays ranging from nine to twelve months.[4]

The plaintiffs in this case each received interim assistance from the IDPA prior to review of their claims by the SSA. Each plaintiff was found to be non-disabled in the SSA's initial determination and, as a result, had his or her interim assistance terminated. Subsequently, each plaintiff successfully appealed the initial determination and was ultimately found to be disabled, thus entitling him or her to receive retroactive SSI and SSP.

### History of the Case

Count I of the complaint attacks, on statutory and constitutional grounds, IDPA's practice of terminating interim financial and medical assistance given to those who apply for federal and state disability benefits solely on the basis of an initial determination of non-disability made by the Social Security Administration. It further challenges IDPA's practice of relying on the SSA's determination of disability and appellate procedures as the basis for entitlement to and appeal from denial of SSP benefits.

The plaintiff class in Count I was certified on October 7, 1977 and consists of "all disabled persons whose assistance under AABD and Medicaid has been denied or terminated by the IDPA solely because of an initial determination by the SSA that the applicant or recipient is not disabled, without a prior to subsequent hearing." *Dixon v. Quern*, 76 F.R.D. 617, 620 (N.D.Ill. 1977).[5]

On that same date plaintiffs' motion for a preliminary injunction was denied after hearing by Judge Leighton. Plaintiffs' renewed motion for preliminary injunction is currently pending before this court but a decision on that motion is obviated by our decision on the motions for summary judgment.

On February 11, 1980 this court issued an order in response to the state and federal defendants' motions to dismiss Counts I and II. The order granted the state defendants' motion to dismiss insofar as the plaintiffs' complaint purported to state a claim for denial of a hearing on the merits of their disability in connection with the termination of state interim assistance. The state defendants' motion to dismiss was denied as to plaintiffs' claim that the IDPA's delays in processing of applications for aid to the disabled violated the due process clause of the fourteenth amendment. Plaintiffs in Count I also claim statutory violations, the substance of which was not addressed in this court's February 11 order.

In deciding the parties' cross motions for summary judgment on Count I[6] of the complaint, the court is presented with the following questions: 1) whether the state's adoption of the SSA's disability determination and appellate procedures in administering its SSP program violates certain state statutory provisions; 2) whether federal regulations require the state to provide a separate hearing on the merits of disability and more rapid disposition of appeals following denial of applications for disability assistance; and 3) whether delays in the procedure for appeals from denial of applications for disability assistance violate the due process clause of the fourteenth amendment.

---

4. Amended Complaint, ¶ 45.

5. This court has, on further analysis, realized that the original determination of the class was partially inaccurate. The class has, as a result, been redetermined. *See* n.9 *supra.*

6. Like Count I, Count II of the complaint seeks relief on due process grounds for delays in the appellate process. In addition, it seeks relief for delays on federal statutory regulatory grounds and provision of notice stating the grounds for the initial non-disability determination by the SSA.

## I.

Citing Ill.Rev.Stat. ch. 23 § 3–4[7] and Article XI, § 11–1 *et seq.*,[8] plaintiffs argue that Illinois law requires that the state provide a hearing on the issue of disability. Defendant in fact agrees that the state has to provide a hearing; however, he contends that the state has complied with this requirement by adopting the SSA's appellate procedures. In response, plaintiffs argue that Illinois cannot delegate to the SSA its duty to provide hearings because the state's aid program is independent of the federal program. In support of this proposition, plaintiffs cite *Johnson v. Quern*, 90 Ill.App.3d 151, 45 Ill.Dec. 500, 412 N.E.2d 1082 (4th Dist. 1980). In that case, although the plaintiff's status was identical to that of the members of the plaintiff class in the present lawsuit, the court characterized the application for state aid as one for AABD rather than SSP. The court then held that the state AABD program was a program parallel with, but distinct from, the state SSP program. Based in part on this finding, the court also held that IDPA was obligated to provide hearings to applicants on the issue of disability.

In order for plaintiffs to persuade this court to adopt the *Johnson* court's finding that IDPA is obligated to provide separate hearings to applicants on the issue of disability, plaintiffs must first convince the court of the validity of the rationale on which the *Johnson* court's finding was primarily based; namely, that the state AABD program is independent from the SSP program. This is so because if there were in fact two separate programs, applicants for the AABD programs, who had not also applied for SSP and SSI, would have no access to the federal agency's appellate procedures and thus no meaningful hearing of their claim.

This court does not, however, accept the analysis of the *Johnson* court.[9] The statutes themselves and the legislative history compel this court to find that there is in fact only one state aid program.[10]

Prior to 1974, Illinois administered the AABD program, Ill.Rev.Stat. ch. 23 § 3–1 *et seq.* (1973), a state and federally funded program. In January, 1974 Congress instituted the SSI program, a national program with uniform requirements for the provision of cash assistance to the aged, blind and disabled. U.S.Code Cong. & Adm.News 4992 (1972). This program replaced the former state administered program. Follow-

---

7. Ill.Rev.Stat., ch. 23 § 3–4 provides as follows:

"The existence of a qualifying disability for aid as a disabled person shall be termined by technically competent persons *designated* by the Illinois Department on the basis of medical, social and vocational reports certified by the County Department in the manner required by the Illinois Department. A disabled applicant or recipient shall submit to an examination or re-examination as to his disability as required by rule of the Illinois Department." (emphasis added).

8. Plaintiffs rely principally on § 11–8.6 which provides:

"A decision on appeal shall be given to the interested parties within 60 days from the date of the filing of the appeal, *unless additional time is required for a proper disposition of the appeal.* All decisions on appeals shall be binding up and complied with by the County Departments and local governmental units." (emphasis added).

9. The decision of the U. S. Supreme Court in *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) does not prohibit this result. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

10. In order to avoid further confusion, this court notes that because of its finding that there is only one state aid program, it is technically incorrect to refer to persons like the plaintiff in *Johnson* and the plaintiff class in this case as applicants for AABD. An application for state aid, although still titled Aid to the Aged, Blind and Disabled is *not* an application to that now defunct program. It is rather an application for SSP benefits and should be referred to as such. Therefore, the *Johnson* court's characterization of the application, see 45 Ill.Dec. at 501, 412 N.E.2d at 1083, was inaccurate as was the court's original determination of the plaintiff class in this case. *See Dixon v. Quern*, 76 F.R.D. 617, 620 (N.D.Ill. 1977). As a result, for the purpose of clarity, the court's class determination is amended to consist of

All disabled persons whose assistance under [SSP] and Medicaid has been denied or [whose interim assistance has been] terminated by the IDPA solely because of an initial determination by the SSA that the applicant or recipient is not disabled, without a prior or subsequent hearing.

The bracketed portions represent changes from the initial class determination.

ing enactment of the SSI program Illinois revised its AABD program by adding §§ 3–13 through 3–15 to ch. 23. These sections declared that the federal government had the primary responsibility for providing aid to the aged, blind and disabled and mandated a supplemental state program.

Although the state did not revise the former provisions of the AABD program, it is clear from the added sections that the state no longer has a fully independent program for aid to the aged, blind and disabled. The legislative history behind the passage of these sections mandates this conclusion.

The legislative history is not extensive, but every reference to the interaction of the state and federal programs refers to a take-over by the federal government and a supplemental program by the state. As stated by Senator Moore:

"This bill is implementing legislation which is needed when the Federal government takes over the Old-Age, Blind and Disabled category from the State of Illinois on January 1, 1974. Under the bill that was passed there is a basic federal grant that will be payable through the Social Security Administration to all aged, blind and disabled. It also provides that a mandatory State supplement insuring to those eligible under the present Aged, Blind and Disabled program shall be paid in January of 1974 at the same rate that they were receiving in December, '73."

October 30, 1973, 3rd Special Session, 78th General Assembly, p. 17. This was reiterated by Rep. Campbell when he said that the sections

". . . set[s] forth the machinery for the Department of Public Aid to work in relationship with the Federal Government in the take over of the aid to blind and disabled and also provide[s] for the state to pay supplemental income . . . to those recipients . . ."

Nov. 16, 1973, 2d Special Session, 78th General Assembly, p. 7. In fact, the only issue raised in opposition to adoption of the new sections was the contention that it was unwise to allow the federal government to take over this state program. *See*, comments of Senator Berning, October 30, 1972, 3rd Special Session, 78th General Assembly, p. 17–18.

This court's finding that there is only one state aid program does not dispose of plaintiffs' claim that the statutory scheme requires a separate hearing. Given the fact that the state statute requires a hearing for determining whether an applicant is entitled to SSP, the issue remains as to whether the state may delegate this duty to the federal agency. This court concludes that the state's delegation is not unlawful.

Nowhere in the state statutory framework is there language precluding the IDPA from delegating the provision of an appellate process to another agency. The state has broad discretion in the administration of its welfare programs, *Michael Reese Physicians & Surgeons, S. C. v. Quern*, 606 F.2d 732 (7th Cir. 1979), panel *aff'd. en banc*, 625 F.2d 764 (7th Cir. 1980) *cert. denied*, 449 U.S. 1979, 101 S.Ct. 860 (1981), and has authority to issue regulations governing determinations of disability under ch. 23 § 3–13 Ill.Rev.Stat. Departmental regulations must be accorded substantial deference and should not be disturbed unless there are compelling reasons to do so. *Quern v. Mandley*, 436 U.S. 725, 738, 98 S.Ct. 2068, 2076, 56 L.Ed.2d 658 (1978); *Illinois Council for Long Term Care v. Miller*, 503 F.Supp. 1091, 1094 (N.D.Ill.1980). No such reasons have been demonstrated sufficient to justify disturbance of IDPA's process of disability determination.

The court also notes that the regulations delegating to the federal agency the state's duty to provide a hearing are clearly a rational interpretation of the statutory scheme. Since the only state program for financial assistance to the aged, blind and disabled is a program which supplements the federal program, it is reasonable for the state to adopt both the SSA disability finding and the SSA appellate procedure. If the IDPA were to set up independent procedures for determining disability there could

theoretically be a finding of non-disability by the federal agency and a finding of disability by the state agency. That would lead to the awkward scenario of a supplemental payment to someone not entitled to the basic grant.[11] Further, in an area of cut backs in funding to many of our financial aid programs, there is an increased need for judicious administration of these programs. Requiring duplicate disability determinations and appellate procedures, for what is in essence a single program, would serve no purpose except to decrease funds available to the needy who are the intended beneficiaries. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976).

Finally, this court rejects plaintiffs' attempt to argue that, by rejecting an amendment to Article II of the Illinois public aid code which would have statutorily approved the IDPA's adoption of SSA disability determinations, the Illinois legislature has implicitly disapproved the regulations delegating the duty to provide a hearing to the federal agency. The legislative history does not support this argument. Additionally, the court notes that plaintiffs' argument accepted in its entirety would also require this court to find that the legislature disapproved interim assistance. The amendment to Article IV which was considered by the legislature would have statutorily authorized interim assistance payments now made pursuant to regulation. Plaintiffs obviously do not adopt this position.

## II.

■ In claiming that they are entitled to hearings and more rapid disposition of their appeals, plaintiffs rely on their contention that an application for SSP is also an application for Medicaid, thus requiring the state to comply with certain federal regulations issued pursuant to the Medicaid statute. Plaintiff cites 42 C.F.R. 431.200 through 431.250 as mandating a hearing on the mer-

its of an applicant's claim of disability and 42 C.F.R. 431.244 as requiring a decision within 90 days of a request for hearing. If these regulations are applicable, the state defendant is in compliance with neither of them.

This court has already held that the state may adopt federal SSI procedures in administering its SSP program. *See* pp. 987–988 *infra*. Thus, the regulations potentially in conflict with the Medicaid regulations just cited are SSI regulations which set no definite time limits for the appellate process, 20 C.F.R. 416.1400–416.1494, and would require no separate state hearing on the merits of disability, *see Id. supra*. If the SSI regulations control, the state defendant is in full compliance.

The state defendant maintains that the plaintiffs are applying for SSI and SSP, not for Medicaid. This is technically incorrect. A state agency in certain instances may not require a separate application for Medicaid where an individual has applied for and received SSI and/or SSP; 42 C.F.R. 435.-909, and thus an application for SSI/SSP, once granted, is an application for Medicaid. Further, the Illinois Department of Public Aid's Categorical Assistance Manual provides that a separate application for Medicaid will not be required from applicants for aid to the aged, blind and disabled (now SSP). Categorical Assistance Manual 5004.2. The plaintiff class falls within this group. Plaintiffs are applicants for both SSI/SSP and Medicaid. The issue then is whether the state must comply with SSI or Medicaid regulations.

Rather than focusing on the details of individual regulations, it is necessary for this court to first view the statutory scheme as a whole. *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1979), *reh. den.*, 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131; *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525

---

11. The fact that certain parties, represented by the plaintiffs, are initially found non-disabled, thus requiring their interim assistance to be revoked, and are subsequently determined to be disabled upon completion of the federal pro-

gram's appellate process, thus entitling them to retroactive SSI and SSP, is an unfortunate consequence of the statutory scheme, but is insufficient to render the scheme unreasonable.

(1975). Congress has provided a uniform federal program for financial assistance to the aged, blind and disabled (SSI) which Illinois has chosen to supplement (SSP). Along with this cash assistance the state and federal governments together automatically provide medical assistance (Medicaid) to those who are eligible for SSI/SSP.

The state defendant's contention that an SSI/SSP application is not a Medicaid application is based on the correct assumption that, with respect to the plaintiff class, Medicaid is a benefit which is conferred upon receipt of SSI and/or SSP. Since the plaintiff class represents applicants for SSI, SSP and Medicaid, eligibility for Medicaid for this class is authorized by ch. 23 § 5–2(1), Ill.Rev.Stat.[12] Medicaid eligibility is premised on being a recipient of SSI and/or SSP. Hence the SSI/SSP eligibility determination must precede the Medicaid eligibility determination.[13] *Cf. Drogolewicz v. Quern*, 74 Ill.App.3d 862, 30 Ill.Dec. 865, 393 N.E.2d 1212 (1979).

Plaintiffs attempt to put the procedural cart before the horse by arguing that Medicaid regulations as to determining eligibility apply when, in reality, eligibility for Medicaid under the statutory provisions applicable to plaintiffs is premised on SSI/SSP eligibility, which eligibility must be determined according to SSI regulations. Plaintiffs' mischaracterization of the interaction of these programs is apparent in their argument that a Medicaid eligibility determination should control the SSP eligibility determination. This is simply inaccurate. Medicaid eligibility is premised on *receipt* of SSP. The court holds that when a concurrent application for SSI/SSP and Medicaid is made, the SSI regulations regarding hearing requirements and time limits apply and further finds that the state defendant is in compliance with these regulations.[14]

### III.

Plaintiffs' final argument is that the state defendant has violated the due process clause of the fourteenth amendment by adopting SSA appellate procedures which involve delays of nine to twelve months before a denied applicant can obtain a hearing on the merits of his disability. This court believes that its resolution of this issue must await its decision on Count II of plaintiffs' complaint. As has already been stated, n.5 *supra*, that count seeks in part relief on statutory and regulatory grounds for the aforementioned delays. This court is cognizant of the well-settled principle that courts should not render decisions on constitutional grounds if the decisions may be made without reaching the constitutional issue. *Regents of University of California v. Bakke*, 438 U.S. 265, 282, 98 S.Ct. 2733, 2744, 57 L.Ed.2d 750 (1978) (opinion of Powell, J.); *Ashwander v. TVA*, 297 U.S. 288, 346–348, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936) (concurring opinion). Therefore, the court will not address the due process issue at this time.

For the foregoing reasons, summary judgment is granted for defendant on Count I with regard to all plaintiffs' claims except that charging a violation of the Due Process Clause of the fourteenth amendment. Decision on the latter must await further briefing on Count II.

---

**12.** The Medicaid provision states:

"Medical assistance under the Article shall be available to . . .

1. *Recipients* of basic maintenance grants under Article III [SSP] [etc . . .]

Ch. 23 § 5–2 Ill.Rev.Stat. (emphasis added). The relevant SSP provision states that "persons qualified for financial aid for basic maintenance *shall* be entitled to receive, under Article V, all necessary medical assistance." Ch. 23 § 3–6 Ill.Rev.Stat. (emphasis added). See also, 42 U.S.C. § 1396a(a)(10)(A).

**13.** It is true that one who is disabled ("otherwise eligible for SSI/SSP") but who does not qualify because of some non-disability criterion can submit an application for Medicaid independent of an application for SSI/SSP under ch. 23 5–2(2). However, the plaintiff class is not within this group.

**14.** This in no way renders the Medicaid regulations superfluous. They must be complied with when applications are made for Medicaid pursuant to sections not applicable here. This is exemplified by the authorities cited by plaintiffs in their brief.