(No. 59685.— ▮▮▮▮▮▮▮▮▮▮▮)

THE PEOPLE *ex rel.* TYRONE FAHNER, Attorney General, Appellant, v. COLORADO CITY LOT OWNERS AND TAXPAYERS ASSOCIATION *et al.* (Mark P. Binstein, Appellee).

*Opinion filed March 22, 1985.*

2

Neil F. Hartigan, Attorney General, of Springfield (Kathleen Hogan Morrison, Assistant Attorney General, of Chicago, of counsel), for appellant.

No appearance for appellee.

JUSTICE WARD delivered the opinion of the court:

This appeal is from an order of the circuit court of Cook County which modified a consent decree entered earlier, the terms of which had been agreed upon by the Attorney General, Mark P. Binstein and the Colorado City Lot Owners and Taxpayers Association. The Attorney General appealed, contending that the court was without authority to modify a consent decree without the consent of the parties. The appellate court affirmed (119 Ill. App. 3d 691), and we allowed the Attorney General's

4

petition for leave to appeal under our Rule 315 (87 Ill. 2d R. 315). The respondent Binstein filed a brief *pro se* in the appellate court. No brief for the respondent has been filed in this court.

On December 20, 1978, the Attorney General filed a complaint in the circuit court seeking injunctive and other relief against Mark Binstein and a nonprofit corporation, the Colorado City Lot Owners and Taxpayers Association (Colorado Association). The complaint alleged that Binstein, a resident of New Jersey, had violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*) (the Act) by misrepresenting and by failing to disclose material facts in soliciting Chicago-area owners of lots in Colorado City, Colorado, to join an action pending in the United States district court at Chicago against Great Western Cities, the developer of Colorado City, a residential complex. On February 2, 1979, a consent decree agreed to by the Attorney General and Binstein was entered in the circuit court. The decree described Binstein's complained-of activities and enjoined their practice. The decree set out, *inter alia*, that Binstein had represented to Colorado Association members and to members of similar associations that he was an expert in investigations of land fraud, though he simply had been active in organizing lawsuits against land developers; that Binstein had claimed to have successfully exposed fraudulent land developers in lawsuits, recovering significant amounts for the lot owners, though those suits were in fact only pending; that Binstein also told association members that the research needed to uncover land fraud involved great expense; and that, from the funds collected for research, he would receive only a consultation fee. The consent decree recited that Binstein had been enjoined from operating in Indiana after a court there had found that he had misappropriated $190,000

from a similar association's funds; that he had stipulated with law-enforcement authorities in Wisconsin that he would not solicit funds in that State as an agent for property owners; and that he had been convicted in New York for securities fraud in 1971. The decree stated that Colorado Association members and members of other associations never were advised of the actions taken against Binstein in these jurisdictions. Further, Binstein's research had never, despite his representations, been proved to be of value in exposing land fraud.

The consent decree also contained injunctive provisions. Specifically, article V, section C, of the decree enjoined Binstein from organizing or establishing any association for the purpose of soliciting prospective litigants against any land developer without first entering into an assurance of voluntary compliance with the consumer fraud division of the Attorney General's office. Section D of article V enjoined Binstein from soliciting, collecting or disbursing funds on behalf of any such association formed to solicit prospective litigants.

An assurance of voluntary compliance is a device used by the Attorney General as an aid to the enforcement of the Consumer Fraud and Deceptive Business Practices Act. It is an assurance given the Attorney General that the person giving the assurance will desist from the conduct of which the Attorney General complains. The concerned statute provides that the Attorney General "may accept an Assurance of Voluntary Compliance with respect to any method, act or practice deemed to be violative of the Act from any person who has engaged in, is engaging in, or was about to engage in such method, act or practice. Evidence of a violation of an Assurance of Voluntary Compliance shall be prima facie evidence of a violation" of the Act. Ill. Rev. Stat. 1977, ch. 121½, par. 266.1.

After the consent decree was entered, the parties en-

gaged in negotiations in an attempt to reach mutually acceptable assurances of voluntary compliance regarding Binstein's involvement with a number of property-owner associations. The negotiations were acrimonious. Each side alleged bad faith in the other, repeatedly interrupting the negotiations as each sought relief from the court. On January 31, 1981, the Attorney General filed a petition for a rule to show cause alleging that Binstein had violated the consent decree in that he had become involved in the Rotonda Lot Purchasers Association (Rotonda), an organization comprised in part of Illinois residents owning property in the Rotonda development in Florida, without first securing an assurance of voluntary compliance. The court, though critical of what it considered to be the Attorney General's lack of diligence in negotiating an assurance of voluntary compliance with Binstein as to Rotonda, found Binstein to be in contempt of court and fined him. (*People ex rel. Fahner v. Colorado Lot Owners* (1982), 108 Ill. App. 3d 266.) The parties subsequently, on March 27, 1981, entered into an assurance of voluntary compliance as to Rotonda.

On June 1, 1981, Binstein notified the Attorney General that he wished to enter into an assurance of voluntary compliance regarding his proposed investigation into another Florida land development, Palm Coast. Binstein requested that the assurance be identical in terms with that negotiated for the Rotonda development, but the Attorney General refused to approve an identical assurance until more information concerning Palm Coast was received. The Attorney General also stated that he would require, before an assurance would be approved, that Binstein disclose to Palm Coast association members his conviction in New York for securities fraud and provide them with an accurate report of the status of the similar litigation in which he was involved. On September 22, 1981, Binstein, under the consent decree,

filed a petition for a rule to show cause against the Attorney General and an assistant Attorney General, alleging that they had unreasonably withheld an assurance of voluntary compliance for Palm Coast. During the hearings on the petition, the court was critical of the parties for bringing grievances, it said, without justiciable issues before the court and suggested that, absent any additional allegations of wrongdoing, Binstein should be given an assurance of voluntary compliance materially similar to the Rotonda assurance. Shortly thereafter, the parties agreed upon and executed an assurance of voluntary compliance in regard to Palm Coast based on the Rotonda assurance, and Binstein's petition for a rule to show cause was dismissed.

In May of 1982, Binstein sought to enter an assurance of voluntary compliance concerning Rio Communities, a development in New Mexico. He requested that the assurance be identical to the Palm Coast assurance. Before an assurance for Rio Communities could be negotiated, however, the Attorney General filed a petition for a rule to show cause alleging that Binstein, in violation of section C of the consent decree, had taken control of the Colorado Association by attempting to determine litigation strategy and by proposing unauthorized settlements in a Federal suit brought by the Colorado Association against Great Western Cities. The Attorney General also charged that Binstein had transferred $25,000 of funds of Colorado Association and a related association to his personal account. The Attorney General filed a motion to authorize his suspending negotiations with Binstein regarding any further assurances "until the Attorney General and the court are satisfied that the interests of the public will be served in such negotiations." Binstein, for his part, filed a motion to strike and dismiss the Attorney General's petition for a rule to show cause, and alleging that the Attorney General had im-

properly secured citizen complaints against Binstein, the Colorado Association and a related association filed a motion to vacate the consent decree.

The court did not call for oral argument, observing instead that it had studied all the documents before the court and had reviewed its notes and selected transcripts of the earlier proceedings. The court found that, considering all of the matters pending before the court and the past conduct of the parties, both parties had manifested an intention to repudiate sections C and D of article V of the consent decree. The court denied the petitions and motions of both sides and on its own motion struck sections C and D from the consent decree.

We begin by stating that, although the respondent has failed to file a brief, we consider that we should examine the questions presented by this appeal. See *First Capital Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

Though not addressed in the petitioner's brief, we first consider whether this court has jurisdiction in this appeal. (*Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536; *Berber v. Hass* (1964), 30 Ill. 2d 263.) Typically an appellate court will not review a consent decree, because a decree entered by consent is no more than a court's recording of an agreement reached by the parties in settlement of a dispute or claim and is not a judicial determination of their rights. (*Bergman v. Rhodes* (1929), 334 Ill. 137; *Guyton v. Guyton* (1959), 17 Ill. 2d 439; *People ex rel. Lampkin v. Brown* (1980), 81 Ill. App. 3d 869.) Appellate review, however, will be given a consent decree when the rights or interests of the public have been affected. *Metropolitan Sanitary District ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458; *Dillman v. Dillman* (1951), 409 Ill. 494; *Massell v. Daley* (1949), 404 Ill. 479.

Once a consent decree is entered, it is generally con-

sidered to be binding upon the parties and it cannot be amended or varied without the consent of each party. (*People ex rel. Stead v. Spring Lake Drainage & Levee District* (1912), 253 Ill. 479; *Dunaway v. Storm* (1975), 30 Ill. App. 3d 880; *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123.) This is not, however, without exception. In *United States v. Swift & Co.* (1932), 286 U.S. 106, 76 L. Ed. 999, 52 S. Ct. 460, the Supreme Court upheld the authority of a court to modify an injunctive order, entered by consent, in order to adapt to changes in the conditions surrounding the entry of the order. The court stated that a court of equity "does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." 286 U.S. 106, 114-15, 76 L. Ed. 999, 1006, 52 S. Ct. 460, 462. (See *Material Service Corp. v. Hollingsworth* (1953), 415 Ill. 284; *Bundy v. Church League of America* (1984), 125 Ill. App. 3d 800.) The circuit court here potentially had authority to modify the consent decree, but it must be determined whether the circumstances warranted the court's modification of the decree.

The Attorney General is charged with the duty and given the power to enforce the Consumer Fraud and Deceptive Business Practices Act so as to protect citizens from fraud and deceptive practices. (Ill. Const. 1970, art. V, sec. 15; Ill. Rev. Stat. 1977, ch. 121½, par. 263.) This court has observed that effective regulation under the Act requires flexible implementation on a case-by-case basis because of the " '*** futility of an effort to anticipate and enumerate all the [unfair] methods' and practices that fertile minds might devise." (*Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 290; *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 186.) The Attorney General is under no duty to enter into an assurance of voluntary com-

pliance on the same terms that were negotiated for a previous assurance with the same party. The Attorney General can negotiate for additional or different terms if, under the circumstances, the interests of the public will be better protected. The statute provides that the Attorney General "may accept an Assurance," showing clearly that he has the discretion necessary for effective enforcement of the Act. Ill. Rev. Stat. 1977, ch. 121½, par. 266.1.

Here the parties negotiated and agreed on an assurance for the Rotonda development, but only after Binstein had been adjudged in contempt for violating the consent decree by his unauthorized involvement in that development's landowner association. Binstein then requested that a duplicate of the Rotonda assurance be applied to his involvement in the Palm Coast development. The Attorney General refused the request, stating that because less information about Palm Coast had been received from Binstein there was concern that the Rotonda assurance would be insufficient to govern Binstein's involvement with the Palm Coast association. Further, the Attorney General insisted that Binstein disclose his conviction in New York on the fraud charge and the curbs imposed upon him in Wisconsin and Indiana before any assurance would be reached as to the Palm Coast Association. In light of Binstein's past conduct and the clear need to closely monitor his activities in Illinois, the Attorney General's insistence on the disclosure of additional information before entering an assurance was reasonable and understandable for effective enforcement of the Act. The additional disclosure requirements, intended to allow association members to make a more informed decision on whether to retain Binstein's services, were within the Attorney General's duties under the Act and were not, as argued by Binstein, added arbitrarily to prevent him from conducting operations in Illinois.

We consider that the Attorney General's conduct reasonably related to an ongoing investigation into Binstein's practices. Clearly Binstein's background called for appropriate measures to protect involved members of the public. We judge on this record that the Attorney General did not intend to repudiate sections C and D and withdraw them from the consent decree and the court should not have stricken those provisions.

The judgment of the appellate court is reversed, and that portion of the order of the circuit court which modified the consent decree is vacated.

*Appellate court reversed;*
*circuit court vacated*
*in part.*