SAMUEL GUDEMAN *et al.*, Plaintiffs-Appellants, v. JEFFREY C. MILLER, Director, Department of Public Aid, *et al.*, Defendant-Appellees.

Fourth District   No. 4—85—0468

Opinion filed March 31, 1986.—Rehearing denied May 19, 1986.

Diane M. Sauer and George Bell, both of Land of Lincoln Legal Assistance Foundation, Inc., of Champaign, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General and Gabriel M. Rodriguez, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE SPITZ delivered the opinion of the court:

The plaintiffs herein applied for disability assistance under articles III and V of the Illinois Public Aid Code (Code) (Ill. Rev. Stat. 1983, ch. 23, arts. III (pars. 3—1 through 3—15), V (pars. 5—1 through 5—14)) in the early months of 1983. The plaintiffs were denied assistance based upon the determination of the Social Security Administration (SSA) that they were not disabled. The plaintiffs appealed the denial of their applications by the Illinois Department of Public Aid (IDPA)

within 60 days of the notice thereof. The IDPA refused to grant the plaintiffs a hearing to review the adverse disability determinations.

The plaintiffs then brought this class action seeking a writ of *mandamus* ordering the IDPA to provide a hearing to any applicant who has received an adverse determination regarding disability by the SSA who appeals within 60 days. On August 11, 1983, a consent decree was entered into by the parties which provided, in pertinent part:

"2. *Changes in Defendant's AABD Categorical Assistance Manual.* Defendants shall have completed changes in their AABD Categorical Assistance Manual by August 26, 1983, which changes shall provide that Defendants will make their own disability determinations in all AABD and AABD-MANG cases which are denied because the applicant has been found not disabled by the Social Security Administration (hereinafter SSA) upon an application to SSA for benefits and that decision by SSA has been used by the Defendants as an initial determination of not disabled.

3. *Provision of a Hearing.* Defendants will provide a hearing on the issue of disability which complies with Ill. Rev. Stat. ch. 23 secs. 11—8 through 11—8.7, 42 U.S.C. sec. 1396a(a)(3), 42 C.F.R. secs. 431.205, 431.220(a), 431.240, 431.242, and 431.243, and the due process clauses of the United States and Illinois Constitutions, to all persons coming within the class definition on or after August 26, 1983, to the named Plaintiffs, and to all other class members whose names are submitted to Defendants by a Legal Services Program within 30 days of the date that the notice provided in paragraph 4 (four) is mailed to those class members by Defendants' attorneys."

The consent decree applies to applicants for financial and/or medical assistance under articles III or V of the Code.

On August 30, 1983, Public Act 83—0193, which added the following language to section 3—4 of the Code, became effective:

"The Illinois Department may accept determinations as to disability performed under the auspices of the Federal Social Security Administration and properly certified to the Department. The Department shall not consider such determinations final if they have been appealed until a determination is made by an administrative law judge. Furthermore, the Department shall not terminate assistance provided under this Article until there has been such a final determination and certification." Ill. Rev. Stat. 1983, ch. 23, par. 3—4; 1983 Ill. Laws 732.

On October 25, 1983, the plaintiffs filed a complaint for rule to

show cause for IDPA's failure to comply with the provisions of the consent decree. On November 9, 1983, and again on November 23, 1983, the IDPA moved unsuccessfully to modify the consent decree. In its third motion to modify the decree, the IDPA asserted for the first time that Public Act 83—0193 eliminated its obligation to provide a hearing. After a hearing, the court allowed the motion to modify.

The circuit court relied upon *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1985), 106 Ill. 2d 1, 476 N.E.2d 409, wherein the supreme court considered the authority of the circuit court to modify a consent decree, stating:

> "Once a consent decree is entered, it is generally considered to be binding upon the parties and it cannot be amended or varied without the consent of each party. [Citations.] This is not, however, without exception. In *United States v. Swift & Co.* (1932), 286 U.S. 106, 76 L. Ed. 999, 52 S. Ct. 460, the Supreme Court upheld the authority of a court to modify an injunctive order, entered by consent, in order to adapt to changes in the conditions surrounding the entry of the order. The court stated that a court of equity 'does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through *changing circumstances* into an instrument of wrong.' [Citations]." (Emphasis added.) (106 Ill. 2d 1, 8-9, 476 N.E.2d 409, 412.)

It was upon the "changing circumstances" exception which the circuit court relied in allowing a modification of the consent decree.

The court ordered that the following language be added to paragraph three of the consent decree:

> "On and after April 2, 1984, the defendants' compliance with Public Act 83—0193 shall fulfill their duty to provide a hearing hereunder to the extent that such compliance otherwise satisfies the requirements of the due process clauses of the United States and Illinois Constitutions."

The plaintiffs timely brought this appeal, claiming that the circuit court erred in modifying the decree. Among other grounds, plaintiffs claim that the consent decree, as modified, violates Federal Medicaid law and regulations. We agree with this contention; therefore, we reverse.

The pertinent statutory and regulatory provisions support plaintiffs' contention that the circuit court erred in modifying the consent decree because it now conflicts with Federal Medicaid law and regulations. The Federal statutory provision governing grants to States for medical assistance programs provides as follows:

"Sec. 1396a. State plans for medical assistance.

(a) Contents

A State plan for medical assistance must—
* * *

(3) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness * * *." (42 U.S.C. sec. 1396a (1982).)

The Federal regulation governing the provision of a hearing system under the Federal statute on grants to States for medical assistance programs provides:

"Sec. 431.205 Provision of hearing system.

(a) The Medicaid agency must be responsible for maintaining a hearing system that meets the requirements of this subpart.

(b) The State's hearing system must provide for—

(1) A hearing before the agency; or

(2) An evidentiary hearing at the local level, with a right of appeal to a State agency hearing. * * *
* * *

(d) The hearing system must meet the due process standards set forth in *Goldberg v. Kelly,* 397 U.S. 245 (1970), and any additional standards specified in this subpart." (42 C.F.R. sec. 431.205 (1985).)

The Federal regulations also specify when a hearing is required under the Federal statute on grants to States for medical assistance programs:

"Sec. 431.220 When a hearing is required.

(a) The agency must grant an opportunity for a hearing to:

(1) Any applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness; and

(2) Any recipient who requests it because he believes the agency has taken an action erroneously." 42 C.F.R. sec. 431.220(a) (1985).

■ Since Illinois participates in the Federal-State jointly funded Medicaid program, established by title XIX of the Social Security Act (Act) (42 U.S.C. sec. 1396 *et seq.* (1982)), defendants are required to conform to Federal statutory and regulatory requirements. (See *King v. Smith* (1968), 392 U.S. 309, 333-34, 20 L. Ed. 2d 1118, 1134-35, 88 S. Ct. 2128, 2141-42; 42 C.F.R. sec. 431.202 (1985).) From our reading of the statute and regulations quoted above, we believe that Medicaid law requires the State to conduct disability hearings.

■ Defendant cites two Federal regulations (42 C.F.R. sec. 431.10(c)(2)(iii) (1985); 20 C.F.R. sec. 416.903 (1985)) in support of their contention that Medicaid law and regulations are not violated by the modified consent decree. The first Federal regulation relied on by defendant provides:

"The plan must specify whether the agency that determines eligibility for the aged, blind, or disabled is—

(i) The Medicaid agency;

(ii) The single State agency for the financial assistance program under title IV—A ***; or

(iii) The Federal agency administering the supplemental security income program under title XVI (SSI). In this case, the plan must also specify whether the Medicaid agency or the title IV—A agency determines eligibility for any groups whose eligibility is not determined by the Federal agency." (42 C.F.R. sec. 431.10(c)(2) (1985).)

It is clear that this regulation only applies to States which have incorporated that option in their State Medicaid Plan. It is equally clear that Illinois did not elect that option upon adoption of the "Illinois State Medicaid Plan" (plan). Paragraph 1.1 of that plan, as it appears in the record on appeal marked as exhibit No. 5, provides, in pertinent part, as follows:

"1.1 *Designation and Authority*

(a) The *Illinois Department of Public Aid* is the single State agency designated to administer or supervise the administration of the Medicaid program under title XIX of the Social Security Act. (All references in this plan to "the Medicaid agency" mean the agency named in this paragraph.)

* * *

(d) *The Agency named in paragraph 1.1(a) has responsibility for all determinations of eligibility for Medicaid under this plan* [emphasis added]."

Therefore, defendants' argument based upon this first Federal regulation is without merit.

■ The second Federal regulation relied on by defendants provides:

"Sec. 416.903 Who makes disability and blindness determinations.

(a) *State agencies*. State agencies make disability and blindness determinations for the Secretary for most persons living in the State. State agencies make these disability and blindness determinations under regulations containing performance stand-

ards and other administrative requirements relating to the disability and blindness determination function. States have the option of turning the function over to the Federal Government if they no longer want to make disability determinations." (20 C.F.R. sec. 416.903(a) (1985).)

It appears that this regulation has no applicability to the present case. The provision in this regulation which gives States the option of turning over the function of making disability determinations for purposes of social security and SSI to the Federal government is not applicable in Illinois because Illinois has not chosen that option. We note that another regulation in the same title provides, in pertinent part, as follows:

"Pursuant to section 1634 of the Act, the Secretary may, should a State so desire, enter into an agreement with that State to determine the eligibility for medical assistance on behalf of such State in the case of aged, blind, and disabled individuals under such State's medical assistance plan approved for Federal financial participation under title XIX of the Act." (20 C.F.R. sec. 416.2101(a) (1985).)

As noted above, Illinois did not elect this option when it adopted its plan. Therefore, defendants' argument based upon the aforementioned regulation is without merit.

■ The only other authority cited by defendants in support of their contention that the modified consent decree does not violate Federal Medical law and regulations is *Dixon v. Quern* (N.D. Ill. 1982), 537 F. Supp. 983. *Quern* was vacated upon the plaintiff's motion. (*Dixon v. Miller* (N.D. Ill. 1984), 599 F. Supp. 395.) That vacature rendered the decision void (Black's Law Dictionary 1388 (5th ed. 1979); consequently, this case has no precedential value. Furthermore, we do not believe that *Quern* fully supports defendants' position; therefore, defendants' argument, based upon *Quern*, is without merit.

For all of the foregoing reasons, we believe that the consent decree, as modified, creates a direct conflict with Federal Medicaid law and regulations. Since we have come to this conclusion, we need not consider plaintiffs' other arguments in support of the contention that the circuit court erred in modifying the consent decree.

We hereby vacate the order of the circuit court which modified the consent decree.

Reversed and vacated.

WEBBER and MORTHLAND, JJ., concur.