THE CITY OF HIGHWOOD *et al.*, Plaintiffs-Appellees, v. JOSEPH D. OBENBERGER, a/k/a J.D. Obenberger, Defendant-Appellant.

Second District   Nos. 2—92—0474, 2—92—0768 cons.

Opinion filed December 18, 1992.

1068

Joseph D. Obenberger, of Highwood, appellant *pro se.*

Diambri & Caravello, of Highwood (Paul P. Diambri and Brian C. Donegan, of counsel), for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, J.D. Obenberger, former alderman of the City of Highwood, Illinois, appeals from the order of the circuit court of Lake County denying, *inter alia,* his motion to vacate an agreed order granting plaintiffs', City of Highwood and Mayor Fidel Ghini's, request for declaratory relief. Defendant's fundamental appellate contention is that the trial court was without subject matter jurisdiction to grant a temporary restraining order and subsequently enter an agreed order pursuant to plaintiffs' complaint for declaratory and injunctive relief because plaintiffs' sole and exclusive remedy at law was *quo warranto.*

Plaintiffs' "Complaint in Chancery" alleged that on March 3, 1992, defendant, at a regularly scheduled meeting of the Highwood city council, orally tendered his resignation from his position as chairman of the license committee. The complaint further alleged that during the course of the meeting defendant delivered a typed and signed letter of resignation to Alderman Powers. A copy of the letter, attached as an exhibit to the complaint, reads as follows:

"TO THE MAYOR AND CITY COUNCIL OF HIGHWOOD, ILLINOIS

3 February [*sic*] 1992

I hereby resign unconditionally as Alderman of the Fourth Ward of the City of Highwood, effective immediately.

Sincerely,

/s/ J.D. Obenberger

J.D. Obenberger"

Attached to the letter, or handwritten on the letter itself, was an additional message stating:

"Please Convey immediately to the Mayor. This is simply not worth the anguish, insult, and degradation at the hands of those I have only [unintelligible]."

The following day Alderman Powers delivered defendant's resignation letter to the mayor, and the mayor accepted defendant's letter of resignation.

On March 6, 1992, defendant met with the mayor and various city officials to express his desire to withdraw his resignation. According to the complaint, which is consistent with defendant's statement of facts, defendant considered his earlier letter of resignation to be of no effect. Defendant also delivered a signed, handwritten note addressed to the mayor and the city council which purports to withdraw his "inchoate and undelivered" resignation. Defendant's note states the letter of resignation was delivered "to the mayor alone" contrary to his directions and without his permission, consent or knowledge; as a result, defendant considered his letter of resignation as "nullified."

On March 9, 1992, plaintiffs filed a "Complaint in Chancery" seeking a declaration that the position of alderman of the fourth ward was vacant and enjoining defendant from holding himself out as alderman of the fourth ward. Following a hearing on the same day, the circuit court entered an order temporarily restraining defendant from holding himself out as an alderman.

The following day, March 10, 1992, the parties entered into, and the trial court approved, an agreed order which states, in part:

"8. That the Defendant, JOSEPH D. OBENBERGER a/k/a J.D. OBENBERGER, did effectively tender his written unconditional resignation.

9. That said resignation was received by the Mayor of the City of Highwood on March 4, 1992, and receipt of said resignation did complete the resignation process, thereby makes said resignation irrevocable,

\* \* \*

IT IS THEREFORE ORDERED, ADJUDGED and DECREED:

\* \* \*

B) That the position of Alderman of the Fourth (4th) Ward of the City of Highwood previously occupied by Defendant, JOSEPH D. OBENBERGER a/k/a J.D. OBENBERGER, is vacant and may be filled pursuant to statute."

Approximately three weeks later, on April 1, 1992, defendant moved to dissolve the temporary restraining order, vacate the agreed order and to dismiss plaintiffs' cause for lack of subject matter jurisdiction. Defendant argued, as he now does on appeal, that the sole and exclusive

remedy at law by which to try the title to public elective office is *quo warranto* and, therefore, the circuit court was without subject matter jurisdiction to enter the order agreed to by the parties. Following a hearing on April 19, 1992, the trial court denied defendant's motion. On April 20, 1992, defendant filed his first notice of appeal. On May 1, 1992, defendant filed a second notice of appeal.

On May 15, 1992, plaintiffs filed a petition for sanctions pursuant to Supreme Court Rule 137 (see 134 Ill. 2d R. 137). During the pendency of the petition for sanctions, plaintiffs, on June 12, 1992, filed a motion to dismiss defendant's appeal for lack of appellate jurisdiction. On June 17, 1992, plaintiffs' petition for sanctions was denied. On June 26, 1992, defendant filed an additional notice of appeal.

During the pendency of this appeal, the parties have filed a litany of motions, objections thereto and responses which we ordered taken with the case. Additionally, defendant has filed a "Petition for an Order in the Nature of a Writ of Certiorari" and a "Complaint in Mandamus." Both of these were also ordered taken with the case. Prior to reaching the merits of the appeal, we will briefly address the motions and other actions filed with this court.

Plaintiffs have presented two motions to dismiss for lack of appellate jurisdiction. In their first motion, plaintiffs contend that their filing of a petition for sanctions subsequent to defendant's April 20, 1992, notice of appeal precluded the invocation of appellate jurisdiction. Defendant contends that the notice of appeal filed on April 20, 1992, and an amended notice of appeal filed on May 1, 1992, were sufficient to vest this court with jurisdiction. Defendant also contends that plaintiffs' submission to the appellate process estops them from later challenging appellate jurisdiction.

An appellate court is under a duty to consider its jurisdiction and to dismiss an appeal if jurisdiction is lacking. (*Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 440; *Gilkey v. Scholl* (1992), 229 Ill. App. 3d 989, 992.) It cannot be conferred by agreement of the parties (*E.J. De Paoli Co. v. Novus, Inc.* (1987), 156 Ill. App. 3d 796, 798), nor may the failure to file a timely notice of appeal be waived by the parties. *Johnson v. Coleman* (1977), 47 Ill. App. 3d 671, 674.

In *Marsh v. Evangelical Covenant Church* (1990), 138 Ill. 2d 458, the trial court entered judgment in the defendant's favor, and 29 days later, the plaintiffs filed a notice of appeal. On the same day plaintiffs filed their notice, defendant filed a motion for sanctions pursuant to section 2—611 of the Code of Civil Procedure (see Ill. Rev. Stat. 1987, ch. 110, par. 2—611). The appeal and motion proceeded simultaneously until approximately two months later when the trial court denied defendant's

motion for sanctions. Defendant then moved to dismiss the appeal for lack of jurisdiction. In affirming the appellate court's dismissal for lack of jurisdiction, our supreme court held that no appeal may be taken from an otherwise final judgment entered on a claim when a subsequently filed section 2—611 motion remained pending, absent a finding pursuant to Supreme Court Rule 304(a) that no just reason for delay or enforcement exists. *Marsh*, 138 Ill. 2d at 468.

In the present case, plaintiffs filed their petition for sanctions exactly 30 days after the entry of the order denying defendant's motion and approximately three weeks after defendant filed his first notice of appeal. We need not reach the question, however, of whether a motion for sanctions filed subsequent to the notice of appeal renders the notice premature because defendant here filed an additional notice of appeal within 30 days of the order denying plaintiffs' motion for sanctions. Plaintiffs' motion to dismiss, therefore, is moot because even assuming that their argument is correct, the timely filing of the additional notice of appeal subsequent to the disposition of the sanctions motion would have invoked appellate jurisdiction. Accordingly, plaintiffs' first motion to dismiss for lack of appellate jurisdiction is denied.

In their second motion to dismiss, plaintiffs contend that in the absence of fraud an agreed order is not appealable because it represents a consensual agreement between the parties and not a judicial determination of their rights. As a general rule, an appellate court will not review a consent decree because a decree entered by consent is no more than a court's recording of an agreement reached by the parties in settlement of a dispute or claim and is not a judicial determination of their rights. (*People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1985), 106 Ill. 2d 1, 8.) Appellate review, however, will be given a consent decree when the rights or interests of the public have been affected. *Fahner*, 106 Ill. 2d at 8.

Because the agreed order here affects the interests of the public, it is appealable. First, the order directly affects the interests of the citizens of the fourth ward because, by the terms of the agreement, their chosen representative no longer occupies that office. Second, the order decrees that the seat be filled pursuant to statute which contemplates the appointment of a temporary successor. Finally, defendant's departure from office may upset the balance of power within the city council thereby affecting the outcome of ordinances which will impact the public at large. Accordingly, plaintiffs' second motion to dismiss for lack of appellate jurisdiction is denied.

The next "set" of motions, responses and objections filed are cross-motions to strike portions of the respective parties' appellate briefs. The

set consists of seven motions, objections and responses totalling more than 45 pages.

In their motion, plaintiffs move to strike certain sentences from defendant's statement of facts. Plaintiffs contend that the statements are not properly supported by the record. Defendant essentially responds that because the statements were found in documents which were made a part of the common-law record, it was permissible to include statements from those documents in the statement of facts section of his brief.

In his motion to strike portions of plaintiffs' brief, defendant's fundamental contentions are that plaintiffs' brief contains misstatements of fact; assertions of law without citation to authority; statements of law made in a "misleading or misrepresenting" manner; and citation to irrelevant authority. In their response, plaintiffs admit to a typographical error in quoting a statute. Otherwise, they contend, *inter alia*, that the primary thrust of defendant's motion is to argue additional points not raised in his reply brief and that the motion is nothing more than an attempt to circumvent the rule on page limitations.

In reply to plaintiffs' response to his motion to strike, defendant raises a litany of additional arguments including, *inter alia*: (1) an objection that plaintiffs' response improperly seeks affirmative relief in the nature of appellate sanctions; (2) that the proof of service was defective; (3) that plaintiffs' response misrepresents facts; and (4) that plaintiffs' suggestion that defendant was attempting to supplement his reply brief was a "baseless smear" of defendant's integrity.

We have carefully considered the parties' respective motions and objections thereto and have reviewed the briefs. Although we find certain statements contained within defendant's statement of facts to be conclusory, argumentative and not grounded on objective facts, the errant remarks do not render the statement so misleading as to interfere with review; therefore, we need not strike the entire statement of facts. (See *Village of Fox River Valley Gardens v. Lake County Forest Preserve District* (1992), 224 Ill. App. 3d 919, 924.) Moreover, where no flagrant violations of the rules hinder our review, we will consider the brief while disregarding its inappropriate content. *Kritzen v. Flender Corp.* (1992), 226 Ill. App. 3d 541, 547.

Additionally, with respect to both parties' briefs, any statement unsupported by argument or citation to relevant authority will not merit our consideration on review. (See *Holmstrom v. Kunis* (1991), 221 Ill. App. 3d 317, 325.) For the sake of brevity, therefore, the parties' respective motions are granted to the extent that any statement of fact is improperly supported by the record or where any statement is unsup-

ported by argument or relevant citation to authority; otherwise, their respective motions to strike are denied.

In addition to the parties' motions to strike, defendant has also filed a "Petition for an Order in the Nature of a Writ of Certiorari." In his petition, defendant seeks to invoke the original jurisdiction of this court (see Ill. Const. 1970, art. VI, §6; Ill. Rev. Stat. 1991, ch. 37, pars. 32.1, 35) to issue a summons or other order directing the clerk of the City of Highwood to certify and put before this court a copy of the city council proceedings for March 17, 1992, wherein resolution 92—R—2 was passed declaring defendant's aldermanic seat vacant, and that the resolution be reversed or vacated "and held for naught." Defendant contends, *inter alia*, that he is entitled to such relief because: (1) his constitutional right of procedural due process has been violated; (2) the city council lacked personal and subject matter jurisdiction to enter the resolution declaring defendant's aldermanic seat vacant; and (3) the city council violated its own procedural rules.

Plaintiffs respond that this court should not exercise its discretion to entertain defendant's petition because: (1) this court typically exercises its original jurisdiction only in administrative or technical matters; (2) the filing of the petition is premature because the agreed order vacating defendant's aldermanic position would still be in force until this court adjudicates the underlying appeal; and (3) defendant's petition fails to include as necessary parties the city clerk and alderman currently occupying defendant's former aldermanic seat.

Plaintiffs subsequently filed a motion to strike defendant's petition for failure to first obtain leave of court to file the petition. Plaintiffs contend that defendant failed to comply with sections 2—609 and 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 2—609, 2—616) and Supreme Court Rule 381 (134 Ill. 2d R. 381), which requires that defendant obtain leave to file his petition. Defendant responds that the rules do not provide that he obtain leave of this court prior to filing the petition and that the rules cited by plaintiff are inapplicable.

We conclude that it is unnecessary to consider the allegations of defendant's petition or the parties' contentions related thereto for the reason that *certiorari* is a wholly inappropriate vehicle for the type of relief sought by defendant. After reviewing defendant's allegations, the prayer for relief and exhibits attached to the petition, it is apparent that defendant fails to comprehend the nature and purpose of a common-law writ of *certiorari*.

■ The purpose of the common-law writ of *certiorari* is to have the entire record of an inferior *tribunal* brought before the court to deter-

mine, from the record alone, whether that body acted in accordance with applicable law. (*Stratton v. Wenona Community Unit District No. 1* (1990), 133 Ill. 2d 413, 427.) The writ has its origins in chancery and is utilized when a petitioner who was without an avenue of appeal or review could obtain limited review over an action by a court or other tribunal exercising *quasi-judicial functions*. (*Hartley v. Will County Board of Review* (1982), 106 Ill. App. 3d 950, 954.) Its application is limited to obtaining review over a decision by an inferior court or tribunal where that body has acted without jurisdiction, exceeded its jurisdiction or where it is shown that the court or tribunal did not follow the essential procedural requirements applicable to the cases before it. (*Hartley*, 106 Ill. App. 3d at 954.) As a general rule, *certiorari* will not lie to review acts which are ministerial, executive or legislative in nature. 14 Am. Jur. 2d *Certiorari* §§16, 19 (1964).

■ Defendant's appellate argument on this point fails to recognize that the writ applies only to judicial or quasi-judicial acts and that the passage of resolution 92—R—2, in accordance with the March 10, 1992, agreed order, was not a judicial or quasi-judicial act. His assertions appear to rest upon the faulty premise that the city council, when it passed the resolution declaring the fourth ward aldermanic seat vacant, was adjudicating his right to occupy the seat.

A review of the resolution, which was attached as an exhibit to defendant's petition, plainly reveals that the city council was engaged in a perfunctory task of adopting a resolution in accordance with the March 10, 1992, agreed order entered into by the parties. The resolution does not purport to render any finding or ruling based upon an adjudicative or quasi-adjudicative process. Furthermore, there is no language within the resolution to suggest that the city council was engaged in a judicial or quasi-judicial act, nor is there any evidence to suggest that the question of defendant's "right" to occupy the aldermanic seat was decided. The resolution merely recites that the city council concurs in the March 10, 1992, agreed order, and in accordance with that order: defendant effectively tendered his written unconditional resignation; the council accepted his resignation; and the council was declaring the aldermanic seat in the fourth ward vacant. We conclude that defendant's petition for an order in the nature of a writ of *certiorari* is without support and must be denied.

In addition to his pending appeal, motion to strike and *certiorari* petition, defendant has filed with this court a 16-page complaint in *mandamus* and 33-page memorandum in support thereof. In his complaint, defendant again seeks to invoke the original jurisdiction of this court (see Ill. Const. 1970, art. VI, §6; Ill. Rev. Stat. 1991, ch. 37, pars. 32.1,

35) to enter an order directing plaintiffs to restore him to his former position as alderman, return his letter of resignation, pay him back pay and return other incidents of his former aldermanic office. Plaintiffs respond in two separate motions that: (1) defendant's motion is time barred under the doctrine of *laches*; and (2) sections 2—609 and 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 2—609, 2—616) and Supreme Court Rule 381 (134 Ill. 2d R. 381) required defendant to obtain leave of court prior to filing his complaint in *mandamus*.

■ Again it is unnecessary to consider the parties' substantive contentions. Upon review of defendant's complaint and supporting memorandum, we conclude that *mandamus* is wholly inappropriate to provide the relief sought by defendant. *Mandamus* is an extraordinary remedy. (*Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 467.) It is appropriate only where there is a clear right to the requested relief, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ. (*Orenic*, 127 Ill. 2d at 468.) It is issued as an exercise of judicial discretion (*Walter v. Board of Education of Quincy School District No. 172* (1982), 93 Ill. 2d 101, 105), and its only purpose is to enforce rights already lawfully vested. (*Flick v. Kramer* (1987), 151 Ill. App. 3d 836, 841.) Moreover, *mandamus* cannot be utilized to direct a public official or body to reach a particular decision or to exercise its discretion in a particular manner, even if the judgment or discretion has been erroneously exercised. (*Winston Plaza Currency Exchange, Inc. v. Department of Financial Institutions* (1991), 211 Ill. App. 3d 1062, 1068.) Finally, the party initiating a *mandamus* action bears the burden of establishing a clear legal right to the requested relief. *Hampson v. Board of Education* (1991), 215 Ill. App. 3d 817, 827.

■ While it is well settled that *mandamus* is a proper remedy to restore a party to the possession of an office from which he has been improperly removed or whose right to discharge the duties of the office has been improperly or unlawfully interfered with (see, *e.g., People ex rel. Jonas v. Schlaeger* (1942), 381 Ill. 146, 156 (*mandamus* proper to order court officials to allow statutorily qualified appointed judge to remain in office until successor judge qualified)), defendant here has failed to meet his burden of establishing a clear legal right to the aldermanic seat of the fourth ward. At the time of the filing of his complaint and supporting memorandum, a legal question that bears on the existence of defendant's right to the aldermanic seat still exists. That legal question is the very issue which defendant raises before this court on appeal (*i.e.,* whether the circuit court lacked subject matter jurisdiction to enter the

agreed order wherein defendant consented to his resignation and vacation of the fourth ward aldermanic seat). Furthermore, even if this court were to vacate the March 10, 1992, agreed order, the question of whether defendant effectively resigned his seat would still exist. Additionally, defendant admits in his brief that a disputed legal issue of statutory interpretation regarding the power of the mayor to fill a temporary aldermanic vacancy exists.

Defendant's supporting memorandum also raises questions of fact. Where issues of fact exist *mandamus* is an improper remedy. (*Owen v. Mann* (1985), 105 Ill. 2d 525, 531.) For example, defendant raises an issue of fact concerning his intent at the time he tendered his resignation letter and again with regard to his purported letter of withdrawal. Based upon the existence of disputed legal and factual questions relating to defendant's right to occupy the aldermanic seat of the fourth ward, we conclude that defendant has failed to meet his burden, and we accordingly dismiss his complaint in *mandamus*.

Having disposed of the parties' motions, defendant's *certiorari* petition and *mandamus* complaint, we turn now to the merits of the appeal. The primary thrust of defendant's appellate contentions is that *quo warranto* was the sole and exclusive remedy at law by which defendant could have been "ousted" from office. Defendant goes on to argue that because an adequate remedy at law existed, the trial court was without subject matter jurisdiction to enter the March 9, 1992, order granting the temporary restraining order and the March 10, 1992, agreed order.

At the outset, we note that essential to defendant's appellate contentions is his underlying conclusion that he was "ousted" or somehow unlawfully unseated from his office as alderman of the fourth ward. Before turning to the question of whether *quo warranto* was the sole and exclusive remedy available to plaintiffs, it is necessary, as a threshold matter, to consider defendant's characterization of his departure from office.

Throughout the proceedings below and in the multitude of other matters brought before this court, defendant explicitly and implicitly maintains that his departure from office was not the result of his resignation, but rather, was brought about by the coercive effect of plaintiffs' declaratory and injunctive action. Contrary to defendant's characterization, plaintiffs contend that they were not seeking an ouster of defendant but rather a declaration of their rights to fill the vacancy created by defendant's resignation and a construction of the legal effect of defendant's purported withdrawal of his resignation.

After reviewing the entire record on appeal, we find no justification for defendant's notion that he was ousted or otherwise unlawfully un-

seated from office and that the proceedings initiated by plaintiffs were brought for that purpose. It is undisputed that defendant tendered his letter of unconditional resignation to the mayor and city council at the March 3, 1992, meeting, and that he instructed another alderman to deliver the letter immediately to the mayor. It is also undisputed that defendant attempted to withdraw his resignation three days later on March 6, 1992, contending that his earlier resignation letter was of no legal effect. Defendant, however, disputes plaintiffs' contention that the resignation letter effectuated his resignation from office.

After reviewing plaintiffs' complaint and attached exhibits, it is apparent that it was the dispute about the effect of defendant's resignation that prompted plaintiffs to bring an action seeking a declaration that the aldermanic seat of the fourth ward was vacant and to enjoin defendant from holding himself out as the fourth ward alderman. Plaintiffs' complaint did not seek to remove defendant from office, as defendant maintains; rather, it appears to have been brought for the purpose of eliminating uncertainty created by defendant's disputing the effect of his resignation.

Moreover, defendant expressly acknowledged, in the March 10, 1992, agreed order, that he "did effectively tender his written unconditional resignation" and that his "resignation was received by the Mayor of the City of Highwood on March 4, 1992." Defendant's express acknowledgement that he effectively resigned his position further supports our conclusion that defendant misconstrues the nature of his departure from office. Additionally, defendant has failed to articulate a well-reasoned, factually supported rationale as to why we should ignore the plain language of the agreed order. The only explanation that defendant offers as to why the plain language of the agreed order should be ignored is that at the time he signed the order he was agreeing only to waive the notice requirements pertaining to the March 9 hearing. The essence of defendant's argument is that the agreed order is of no effect because, notwithstanding the plain language of the order, it was not his intention to resign from or vacate his aldermanic office when he signed the order.

After reviewing the language of the agreed order, we find nothing contained therein to suggest a waiver of any notice requirements. Defendant's argument appears to be nothing more than an attempt to ignore the plain language of the agreed order. We conclude, therefore, that defendant's characterization that he was ousted from office is of no merit.

The only question remaining is whether *quo warranto* was the sole and exclusive remedy by which plaintiffs could determine whether the

fourth ward aldermanic seat was vacant where defendant tendered an immediate and unconditional, although subsequently disputed, letter of resignation.

The ancient common-law writ of *quo warranto* was an original writ issuing out of chancery in the nature of a writ of right for the king against one who claimed or usurped any office, franchise or liberty, to inquire by what authority he asserted a right thereto in order that it might be determined. (*Rowan v. City of Shawneetown* (1941), 378 Ill. 289, 294, *overruled on other grounds sub nom. People ex rel. McCarthy v. Firek* (1955), 5 Ill. 2d 317, 325.) It is "the voice of sovereignty calling upon the defendant to answer by what authority he acts." (*People ex rel. Ray v. Lewistown Community High School District No. 241* (1944), 388 Ill. 78, 87.) In Illinois, the common-law writ has evolved relatively unchanged into its present day statutory form. The *quo warranto* statute provides, in relevant part:

"§18—101. Grounds. A proceeding in quo warranto may be brought in case:

(1) Any person usurps, intrudes into, or unlawfully holds or executes any office, or franchise, or any office in any corporation created by authority of this State." Ill. Rev. Stat. 1991, ch. 110, par. 18—101(1).

A *quo warranto* proceeding is a challenge to a defendant's right to exercise jurisdiction over territory or to hold public office. (*People ex rel. City of Leland Grove v. City of Springfield* (1988), 166 Ill. App. 3d 943, 945.) It is generally regarded as an appropriate and adequate remedy to determine the right or title to public office and to oust an incumbent who has unlawfully usurped or intruded into such office or is unlawfully holding the same. (65 Am. Jur. 2d *Quo Warranto* §18 (1972).) It has also been held to be the proper remedy for determining the question of whether a person elected to office possesses the requisite qualifications for eligibility. See *Bloome v. Juergensmeyer* (1951), 344 Ill. App. 625, 629; see also *People ex rel. Adamowski v. Wilson* (1960), 20 Ill. 2d 568, 578 (implicitly recognizes that *quo warranto* is the proper procedure to challenge qualifications of police board commissioners); *People ex rel. Reed v. Thomas* (1976), 43 Ill. App. 3d 372, 374 (*quo warranto* appropriate to determine eligibility to hold office of village trustee).

Although the writ is properly employed to try the validity of the organization and title of the officers of public bodies, it is not the proper proceeding to test the legality of the official acts of public officers. (*People ex rel. Chillicothe Township v. Board of Review* (1960), 19 Ill. 2d 424, 427 (*quo warranto* improper to challenge acts of tax board of review where statutory procedures existed).) Moreover, the very nature of

*quo warranto* makes it inapplicable to litigation calculated to prevent dismissal or to retain in office. *Hoffman v. Wilkins* (1971), 132 Ill. App. 2d 810, 816.

■■■ As applied to the present case, it is apparent that *quo warranto* would have been an inappropriate method for the plaintiffs to determine the vacancy of the fourth ward aldermanic seat. Their complaint did not seek to test the qualifications or eligibility of defendant to hold office, nor was it an attempt to oust defendant as a usurper or intruder of the fourth ward aldermanic seat. The purpose of plaintiffs' complaint was to resolve uncertainty engendered by defendant's apparent change of heart about his resignation.

Although not directly on point with the present case, we find that *Hoffman* lends further analogous support to our conclusion that *quo warranto* is inapplicable. In *Hoffman*, plaintiff, director of laboratories for Cook County Hospital, was served with a notice of employment termination due to organizational restructuring. Upon receipt of the notice, plaintiff brought suit enjoining the governing commission of the Cook County Hospitals from dismissing him without first providing a hearing before the civil service commission. On appeal, the governing commission implicitly argued that the proper method for challenging a public official's right to office was through *quo warranto*, and not by injunction. The appellate court recognized the general proposition that *quo warranto* was the proper procedure to challenge a public official's right to office; however, it disagreed with the defendant's contention. The court stated that "the very nature of *quo warranto* makes it inapplicable to litigation calculated to prevent dismissal or to retain office." *Hoffman*, 132 Ill. App. 2d at 816.

Additionally, defendant attempts to argue that *quo warranto* was the only appropriate remedy because, contrary to the allegations of plaintiffs' complaint, defendant could not "oust" himself from office, but it was possible that he forfeited his office, and that a *quo warranto* proceeding "could answer the question." Defendant relies upon the forfeiture language contained within the statute to support this argument. The statute provides that a *quo warranto* proceeding may be brought in the case:

"(3) Any public officer has done, or allowed any act which by the provisions of law, works a forfeiture of his or her office." Ill. Rev. Stat. 1991, ch. 110, par. 18—101(3).

We find defendant's argument confused and patently without merit. "Forfeiture" is defined as "[s]omething to which the right is lost by the commission of a crime or fault or the losing of something by way of penalty." (Black's Law Dictionary 584-85 (5th ed. 1979).) We find nothing

within the record to suggest that the basis for plaintiffs' action was the result of defendant committing a crime or some other action by way of penalty. The forfeiture provision of the *quo warranto* statute, therefore, has no applicability to the present case.

Finally, our determination that *quo warranto* would have been an inappropriate vehicle for plaintiffs to resolve the present litigation makes it unnecessary for us to consider defendant's remaining appellate contentions because his remaining contentions presuppose that *quo warranto* was the proper remedy.

For the foregoing reasons, we enter our disposition as follows: (1) plaintiffs' motions to dismiss for lack of appellate jurisdiction are denied; (2) plaintiffs' and defendant's respective motions to strike are granted to the extent as discussed above, otherwise they are denied; (3) defendant's petition for an order in the nature of a writ of *certiorari* is denied; (4) defendant's complaint in *mandamus* is dismissed; and (5) the order of the circuit court denying defendant's motion to vacate the orders of March 9, 1992, and March 10, 1992, and dismiss plaintiffs' cause for lack of subject matter jurisdiction is affirmed.

Affirmed.

INGLIS, P.J., and UNVERZAGT, J., concur.