LEWIS, J.,
concurring in result only.
I concur in result only based upon two aspects of the majority opinion which cause concern. First, I would conclude that the majority’s analysis and discussion with regard to the Governor’s power to enter into a compact is overly restrictive. Second, I question whether the writ of quo warranto is the appropriate remedy for the relief the majority grants today.
THE CONSTITUTIONAL AUTHORITY OF THE GOVERNOR[10]
I cannot agree with the analysis of the majority, which is unduly restrictive with regard to the constitutional powers of the Governor as the chief executive officer of the State of Florida. The general thrust of the majority opinion indicates that the “necessary business” clause of article IV, section 1(a) of the Florida Constitution does not authorize the Governor to bind the State to an IGRA compact, and the opinion relies upon foreign cases which suggest similar limitations upon the actions of governors in other jurisdictions. I disagree and instead conclude that, if the Compact had not granted and authorized certain types of Class III gaming that are specifically prohibited by state law, the Governor would have been authorized— pursuant to the necessary-business clause — to enter into a compact on behalf of the State without either legislative authorization or ratification under the circumstances presented by the instant case. See Dewberry v. Kulongoski, 406 F.Supp.2d 1136, 1154 (D.Or.2005) (determining that the execution of a gaming compact was “necessary business” that the governor was authorized to transact under an identical constitutional provision). To the extent the majority suggests otherwise, I disagree.
While I agree that the Governor may not bind the State to a compact that specifically conflicts with existing state law, in my view the constitutional provision does afford the Governor a field of operation to enter into a binding compact under circumstances in which the other branches of government have ignored a problem or neglected to act and have thereby created a void by governmental inaction or a total vacuum in an area that will likely create or produce a negative impact for Florida and the citizens of this State. This power is particularly applicable when that void or vacuum has existed with regard to a known problem or issue for an extensive period of time and adverse consequences are reasonably imminent. Here, despite the fact that this gaming issue existed and the Tribe actively sought to negotiate resolution in a compact for almost sixteen years, the Legislature — having full access to the information and issues — did not act. In an effort to protect Florida and the citizens of this State from the results of the federal Department’s clear statement that it would issue Class III gaming procedures (under which the State would re *1052 ceive no revenue and possess no control over the Tribe’s gaming operations) and the pending legal action, the Governor negotiated a compact. Under these imminent circumstances, the Governor’s action constituted “necessary business,” which that office was required to address in an attempt to protect the public interest. To hold otherwise would strip the necessary-business clause of any meaningful field of operation. See Broward County v. City of Ft. Lauderdale, 480 So.2d 631, 633 (Fla.1985) (“[A] construction of the constitution which renders superfluous, meaningless or inoperative any of its provisions should not be adopted by the courts.”).
In my view, the Governor generally possesses the authority to act under a broad range of circumstances where the failure of the other branches of government to act for an extended period of time imminently threatens harm. This may conceivably address matters such as the quality of life, health, or welfare of the citizens of Florida. For example, an emergency that threatens imminent harm to the quality of air or water in Florida may constitute “necessary business” for the Governor depending on the circumstances presented. Further, the Governor is bound by our state Constitution to “take care that the laws be faithfully executed.” Art. IV, § 1(a), Fla. Const. In my view, this duty includes the negotiation of inter-sovereign compacts that (1) are consistent with preexisting state law and (2) further the interests of the State of Florida.[11] These constitutional provisions should be interpreted to afford the Governor the power and authority to negotiate with another sovereign concerning those issues that significantly impact this State and the general well-being of the State even without legislative authorization or ratification under certain circumstances.[12]
QUO WARRANTO
I have concerns with the manner in which the majority has framed the issue presented by this case because it appears to expand the writ of quo warranto to circumstances in which it was never intended to apply. Historically, this Court *1053 has interpreted the writ of quo warranto as a means to challenge the authority or power of a public officer or agency to act in an official capacity. See, e.g., Martinez v. Martinez, 545 So.2d 1338, 1339 (Fla.1989) (challenge to the constitutional authority of the Governor to call more than one legislative special session); State ex rel. Butterworth v. Kenny, 714 So.2d 404, 406 (Fla.1998) (challenge to the authority of capital collateral regional counsel to file extraneous actions); State ex rel. Smith v. Jorandby, 498 So.2d 948, 950 (Fla.1986) (challenge to the authority of public defenders to file actions that do not address an indigent defendant’s liberty interest); State ex rel. Smith v. Brummer, 443 So.2d 957, 958-59 (Fla.1984) (challenge to the authority of the public defender to accept appointment from federal court to represent defendants during federal habeas-cor-pus proceedings); Austin v. State ex rel. Christian, 310 So.2d 289, 291 (Fla.1975) (challenge to the Governor’s authority to assign state attorneys to other circuits). The writ compels a public officer or agency to establish the authority by which it takes official action. See, e.g., State ex rel. Watson v. City of Holly Hill, 46 So.2d 498, 499 (Fla.1950) (challenge to the power of a city to levy and collect taxes on lands). Most recently, we have explained:
Quo warranto is “[a] common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed.” Black’s Law Dictionary 1285 (8th ed.2004). It is the proper vehicle to challenge the “power and authority” of a constitutional officer, such as the Governor. Austin v. State ex rel. Christian, 310 So.2d 289, 290 (Fla.1975).
Crist v. Fla. Ass’n of Crim. Defense Lawyers, 978 So.2d 134, 138 n. 3 (Fla.2008).
A number of other jurisdictions have noted that quo warranto is available to address whether a public official is vested with a power under statutory or constitutional law, rather than (1) how that officer exercises those powers which have been granted or (2) the details surrounding such action. See, e.g., State ex rel. Johnson v. Consumers Pub. Power Dist., 143 Neb. 753, 10 N.W.2d 784, 793-94 (1943) (“The general rule is that quo warranto will not lie for a mere irregular exercise of a conferred power although such irregularity may be sufficient when tested by other remedies to vitiate or render void the act done. If the power attaches the manner of its exercise cannot be challenged by information in quo warranto.” (emphasis supplied)); State ex rel. Lommen v. Gravlin, 209 Minn. 136, 295 N.W. 654, 655 (1941) (quo warranto is improper as a remedy for official misconduct and cannot be employed to test the legality of the official action of public or corporate officers where the underlying power or authority to act exists); State ex rel. McKittrick v. Murphy, 347 Mo. 484, 148 S.W.2d 527, 530 (1941) (noting that the writ of quo warran-to “is not to be used to prevent an improper exercise of power lawfully possessed”); Mora v. Genova, 1998 WL 89326, *2, 1998 U.S. Dist. Lexis 2258, at *8 (N.D.Ill. Feb. 19,1998) (unpublished decision) (“Quo war-ranto is not the proper proceeding to test the Constitutional legality of the official acts of public officers.” (emphasis supplied) (citing People ex rel. Chillicothe Township v. Bd. of Review of Peoria County, 19 Ill.2d 424, 167 N.E.2d 553, 553 (1960); City of Highwood v. Obenberger, 238 Ill.App.3d 1066, 179 Ill.Dec. 65, 605 N.E.2d 1079, 1087 (1992), appeal denied, 183 Ill.Dec. 859, 612 N.E.2d 511 (1993))).
The United States Supreme Court has similarly observed that a quo warranto action “must be brought against the person who is charged with exercising an office or authority without lawful right,” and that “[t]he possession of power is one *1054 thing; the propriety of its exercise in particular circumstances is quite a different thing.” Johnson v. Manhattan Ry. Co., 289 U.S. 479, 502, 504, 53 S.Ct. 721, 77 L.Ed. 1331 (1933) (emphasis supplied). A relevant treatise outlines that the claims of public officers to particular powers can be tested in quo warranto, although it is not available to question the validity of acts within that power. See 2 Chester J. An-tieau, The Practice of Extraordinary Remedies: Habeas Corpus and the Other Common Law Writs § 4.03, at 593, § 4.34, at 663 (1987); see also 43 Fla. Jur.2d Quo Warranto § 18 (“Quo warranto cannot be used to test the legality of official actions of public or corporate officers.”).
Based upon consideration of these proceedings, I have questions with regard to whether we act with proper jurisdiction. If, as I believe, the Governor possesses the authority and power to negotiate and enter into inter-sovereign compacts and has simply invalidly exercised that authority because there is a contractual term that violates preexisting state law (i.e., the ban on certain types of Class III gaming), it is most questionable whether quo warranto constitutes a proper procedural mechanism to challenge the Governor’s actions. Within the context of a petitioner’s challenge to the authority of a state officer or agency to act, this Court should only grant a writ of quo warranto where the officer or agency lacks the authority to act, not where the officer or agency has improperly exercised its authority. Other remedies exist and are appropriate under such circumstances.[13] If not so limited, the door has been opened in this Court for judicial examination and questioning of the details of the exercise of that valid power.
In this sense, the common-law writ of quo warranto is analogous to the writ of prohibition (and arguably other extraordinary writs) in that its application should be greatly limited. This Court has held that the writ of prohibition is intended to be “very narrow in scope, to be employed with great caution and utilized only in emergencies.” English v. McCrary, 348 So.2d 293, 296 (Fla.1977) (emphasis supplied). Further, “[prohibition lies to prevent an inferior tribunal from acting in excess of jurisdiction but not to prevent an erroneous exercise of jurisdiction.” Mandico v. Taos Constr., 605 So.2d 850, 854 (Fla.1992) (emphasis supplied). Quo war-ranto is also an extraordinary writ, and *1055 therefore the strict interpretation applicable to the writ of prohibition is similarly applicable to this prerogative remedy.
In this case, the House of Representatives and Speaker Rubio clearly understood these limitations upon the writ of quo warranto because they expressly and precisely framed their challenge as whether the Governor possesses the authority vel non to negotiate and enter into any Indian-gaming compact without legislative approval or ratification. See Pet. at 6, 28-29 (requesting that this Court “issue a Writ of Quo Warranto to direct the Respondent to justify his authority to bind the State in a Compact with the Seminole Tribe without legislative authorization or ratification, and to issue any order necessary to clarify that the Compact is not binding and enforceable unless and until it is ratified by the Legislature” and “issue a Writ of Quo Warranto declaring that legislative authorization or ratification is necessary for any compact governing gaming on Indian lands to be valid in this State.” (emphasis supplied)). Thus, the House and Speaker Rubio challenged the constitutional authority of the Governor to bind the State of Florida to any Indian-gaming compact in the absence of legislative approval or ratification.
In contrast, the majority today reframes the issue as whether the Florida Constitution grants the Governor the authority to bind the State to this Compact, see majority op. at 1050, and then relies upon discrete details of this specific Compact to redefine the proffered claim and issue. The majority focuses entirely upon the unlawful nature of one aspect of the Compact rather than addressing the question of whether the Governor possesses the authority to bind the State to any IGRA compact without the approval or ratification of the Legislature. In essence, the majority has created an as-applied constitutional challenge to the specific details of this Compact, thereby avoiding the juris-dictionally based question of whether the Governor possesses the power and authority to enter into any Indian-gaming compact in the absence of legislative endorsement. I do acknowledge application of the principle of deciding the case as narrowly as possible, but that detail-based analysis opens expanded quo warranto jurisdictional issues.
A question arises with regard to whether the rephrasing of the issue by the majority, along with its resulting decision, has altered this Court’s quo warranto jurisdiction and expanded the writ beyond its intended purpose of determining whether the Governor or other state officers and agencies possess the authority or power to act vel non. The majority approaches the position that our quo warranto jurisdiction, and the writ itself, constitute a proper means of challenging either (1) the details surrounding an exercise of authority, or (2) alleged errors in official judgment. However, in circumstances such as these, the proper function of the writ is to provide the petitioner with the ability to challenge the state officer’s authority to act without regard to the question of whether the officer properly exercised the authority he or she possesses. Even the cases the majority relies upon in response to my concern involve challenges to the authority of a government official or entity to act, not the details or merits of the matters within the action taken. See Martinez, 545 So.2d at 1338 (challenging the authority of the Governor to call more than one special session to discuss the same subject, not the propriety or the wisdom of the subject); Phelps, 714 So.2d at 455 (challenging the authority of the Legislature to override a veto, not *1056 the merits of the decision to override).[14]
The restructuring of the issue presented by the House and Speaker Rubio causes concern that dissatisfied individuals or entities may seek quo warranto relief whenever a public official or agency acts in a manner which is perceived to be unwise or erroneous. This has never been the objective of the extraordinary writ of quo war-ranto. Interpreting the writ and affording relief in such a manner leads to the establishment of the writ as a routine avenue through which challenges to allegedly erroneous official acts or judgments may be presented, rather than a means through which the threshold question of whether the officer possesses the power to act is presented. I am concerned that the majority has altered the nature of the extraordinary writ of quo warranto when it applies this remedy to address the details of the actions of the Governor or the Legislature, as opposed to addressing the actual jurisdictionally based question of whether the Governor or the Legislature possesses the authority to act with regard to the challenge presented. Cf. O’Donnell’s Corp. v. Ambroise, 858 So.2d 1138, 1142 (Fla. 5th DCA 2003) (Sawaya, J., specially concurring) (“[T]o allow the use of prohibition in the instant case would, in my view, completely vitiate the limitations placed upon use of the writ and convert it from an extraordinary writ to a commonly used method to appeal any erroneous order.”). I am concerned with such a reinvention of the writ of quo warranto. The majority may protest that it has not done so, but its actions undermine those words. Simply saying it does not make it so, and the decisions upon which it relies do not support the statement.
If a court reframes the proceeding as an action challenging the legal correctness of the action of a state officer or agency, rather than the power and authority of the officer or agency to act, the proper procedural device is arguably a declaratory-judgment action, not a petition for writ of quo warranto. See supra note 13.[15] Moreover, this Court generally lacks original jurisdiction to consider declaratory-judgment actions. The circuit and county courts are usually the proper forums in which to seek declaratory relief. Compare art. V, § 3, Fla. Const., with § 86.011, Fla. Stat. (2007); but see art. Ill, § 16(c), Fla. Const, (providing for original declaratory-judgment actions in this Court with regard to legislative-apportionment resolutions).
CONCLUSION
The jurisdictionally based question framed by the House and Speaker Rubio *1057 should be answered. The Governor possesses the authority under the Florida Constitution to enter into Indian-gaming compacts. Here, however, he erroneously exercised that authority because the Compact impermissibly included authorization of Class III gaming specifically prohibited under state law. It is undisputed that the Legislature has acted in this area, and for this reason, I concur in the result of the majority. However, I disagree with the overly restrictive suggestion of the majority and generally conclude that where inaction by the other branches of government for an extended period of time has produced a vacuum under circumstances such as these, the Governor is constitutionally authorized to act under the necessary-business clause to protect the well-being of the State of Florida.

. Since the majority assumes that we possess quo warranto jurisdiction, I address the merits of this case; however, I am concerned that we may lack quo warranto jurisdiction to address the issue as reffamed by the majority.

. Through the IGRA, Congress neither claims to — nor may it — determine who possesses the power to act on behalf of the State of Florida. The State is not an independent sentient being — it may only act through its officers. The fact that the IGRA consistently refers to “the State” when addressing the negotiation of compacts, does not foreclose state law from enabling the Governor to so negotiate. The issue of who may act on behalf of the State of Florida is an issue of state law, not federal law. Therefore, interpretation of the IGRA's use of the noun “the State" is not a proper means of determining whether the Governor may negotiate and consummate inter-sovereign compacts under the necessary-business clause of the Florida Constitution. See art. IV, § 1(a), Fla. Const. Compare Dewberry, 406 F.Supp.2d at 1154-55 (finding that the governor was a proper state officer to negotiate and execute an IGRA inter-sovereign compact pursuant to the necessary-business clause of the Oregon constitution), Langley v. Edwards, 872 F.Supp. 1531, 1535 (W.D.La.1995) (“IGRA does not specify which branch of state government should negotiate with the Indian Tribe." (emphasis supplied)), aff'd, 77 F.3d 479, 1996 WL 46781 (5th Cir.1996), and Willis v. Fordice, 850 F.Supp. 523, 527 (S.D.Miss.1994) (“One issue which the IGRA does not address, and which is the ultimate issue in this case, is which branch of a state government should negotiate the Tribal-State compact with the Indian tribe." (emphasis supplied)), aff'd, 55 F.3d 633 (5th Cir.1995), with majority op. at 1046-47 & n. 5 (“[NJowhere does IGRA equate 'the state' with ‘the governor....’ [Ajlthough IGRA requires a state to negotiate, it does not impose any duty on a state's governor.... Congress knew how to refer to a 'governor' when it wanted to do so.”).

. However, such negotiations and the compacts they produce are subject to the dictates of article I, section 10 of the United States Constitution.

. A more appropriate remedy to challenge an allegedly erroneous or legally invalid decision of the Governor or an agency in an authorized capacity could be a declaratory-judgment action. The purpose of such an action is “to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations, and it should be liberally construed." Martinez v. Scanlon, 582 So.2d 1167, 1170 (Fla.1991) (emphasis supplied) (citing § 86.101, Fla. Stat. (1989)). For example, litigants have used declaratory-judgment actions to challenge the validity of statutes. See id.; see also N. Fla. Women’s Health & Counseling Servs. v. State, 866 So.2d 612, 615 (Fla.2003) (clinics providing abortion services and women’s rights organizations sought declaratory judgment that Parental Notice of Abortion Act was unconstitutional). Further, declaratoiy-judgment actions have been utilized to challenge executive orders issued by the Governor. See Bass v. Askew, 342 So.2d 145, 146 (Fla. 1st DCA 1977) (county commissioner sought declaration that executive order of suspension by the Governor was insufficient and Governor lacked the right to amend the order of suspension). Under each circumstance, the plaintiffs challenged the legal coirectness of the relevant law or executive order, rather than the authority of either the Legislature to enact the law or the Governor to issue the executive order. Since the majority does not address the question of whether the Governor may enter into a compact, this appears to be a case in which we have chosen to address the legal correctness of the Governor's action instead of his ultimate authority to negotiate and enter into inter-sovereign compacts on behalf of the State.

. In Orange County v. City of Orlando, 327 So.2d 7 (Fla.1976), the district court decision reviewed by this Court on the basis of express and direct conflict involved a challenge by Orange County to the annexation of property by the City of Orlando. See City of Orlando v. Orange County, 309 So.2d 16 (Fla. 4th DCA 1975). The Fourth District expressly noted that "[t]he proper method of seeking relief where a municipality has undertaken to exercise jurisdiction or control over land should be through a quo warranto proceeding.” Id. at 16-17 (quoting Caldwell v. Losche, 108 So.2d 295, 296 (Fla. 2d DCA 1959)). However, this Court may only issue writs of quo warranto to state officers and state agencies. See Art. V, § 3(b)(8), Fla. Const. Since the availability of the writ in the district and circuit courts is not similarly limited, see article V, section 4(b)(3), 5(b), Florida Constitution, the reliance of the majority on Orange County to justify its conclusion that quo war-ranto review is proper here is dubious at best.

. The majority claims that the urgency of the instant situation mandates that we resolve this dispute by way of quo warranto. However, we should not permit parties to define this Court's jurisdiction by generating a false emergency. This issue of a compact with the Seminole Tribe has been known for sixteen years. What the majority fails to recognize is that the Legislature created the urgency when it failed to act during those years.